## Steubner's Estate.

The facts appear from the following extract from the adjudication of

HENDERSON, J., Auditing Judge.—Henry Steubner died August 7, 1930, leaving a will whereby, as modified by the codicils, he gave to Alma Boring his household furniture, etc., $5000 to Ethical Culture Society of the City of Philadelphia, $1000 to the accountant in trust for the maintenance of his cemetery lot in Westminster Cemetery, $300 in trust for the maintenance of his parents' cemetery lot in the German Lutheran Cemetery, Reading, Pennsylvania, $70,000 in trust to pay over the net income therefrom to Alma Boring for life, $40,000 in trust to pay over the net income to his niece Emline Moser for life, $10,000 in trust to pay over the net income to his niece Annia Catherine Stuebner for life, five sums of $20,000 in trust to pay over the net income to his nephews Harry Boynton, Paul Boynton, William R. Boynton and Frank J. Boynton and to Jacob Hackert for their lives respectively, $10,000 in trust to pay over the net income to Charles Osborne for life, to each employee (other than Jacob Hackert) who might be in his employ at the time of his decease and continuously in his employ for a period of one year and less than two years immediately prior to his decease $500, two years and less than three years $1000, three years and less than four years $1500, and for a period of four years or more $2000, and the residue of his estate to the accountant in trust to transfer five per cent. of the semi-annual net income to the principal of the estate until the market value of the assets of the residuary estate should reach the sum of $500,000, and the balance of the net income to pay to the following named institutions in equal shares, the same to be known as the "Henry Stuebner Endowment," to wit: Pennsylvania Working Home for Blind Men, Hayes Mechanics' Home, Old Men's Home, Home for Widows and Single Women at Reading, Florence Crittenton Home and Hospital, Seaside Home for Invalid Women, Orphans' Home and Asylum for the Aged and Infirm of the Evangelical Lutheran Church, Working Men's Home Society, Friends' Hospital, Hahnemann Medical College and Hospital, Philadelphia Home for Incurables, American Oncologic Hospital, and Little Sisters of the Poor, Fifty-fourth and Chester Avenue, with further provisions not now necessary to be recited.

It is stated in the petition for distribution that employees of the decedent are entitled to legacies as follows: Alma Boring, May Edna Leist, Grace D. Westphal and Elizabeth A. Donaghy each $2000, Josephine Tobin $1500, Harriet B. Peters and Eva May Locke each $1000, and Anna Margaret Frank (now Lucy) $500.

Sue B. Billings, an employee, claimed a legacy of $2000, and after testimony was taken as to her employment, it was agreed by counsel present at the audit that it be awarded to her. It appears that she had been in the decedent's employ for some thirteen years, but in the four years immediately

preceding the death, on two occasions she had been granted leaves of absence because of illness. Under a reasonable construction of the will she is entitled to the legacy claimed by her.

Mabel Spain, another employee, who worked for the decedent on an average of three days a week for many years, also claimed a legacy of $2000. In compromise of this claim, it was agreed that $1500 be awarded to her.

The principal of the residuary estate is now approximately $100,000, and by the deaths of the respective life tenants will be increased to about $330,000. The direction of the will as to the transfer of five per cent. of the income to principal until the value of the estate shall reach the sum of $500,000, is, therefore, to be observed.

The question is suggested in the petition for distribution as to whether the legatees whose legacies are to be held in trust for them for life are entitled to interest from the date of the decedent's death.

Section twenty-one of the Fiduciaries Act of 1917 provides that interest on all pecuniary legacies "whether bequeathed directly or in trust" shall begin to run from the expiration of one year from the death or from the date of an award made before the end of the year, with the exception, *inter alia*, of legacies "for the maintenance of any person."

It is urged that there is some implication from the relationship between the testator and certain beneficiaries, particularly his housekeeper and employees, that the trusts were for maintenance. There is nothing in the will, however, upon which such an implication may be based, and I am of the opinion that these legatees do not come within the exception made by the act.

The filing of this adjudication has been delayed by an attempt to settle this question by agreement, which, however, was unsuccessful. Because of this, I will award interest on the pecuniary legacies from July 1, 1931.

*John G. Kaufman,* for exceptants.

*Robert W. Archbald, Jr.,* and *Alfred E. Freeman,* contra.

GEST, J., December 31, 1931.—The testator bequeathed a number of pecuniary legacies to his trustee, in trust to pay the income to the several beneficiaries for their respective lives, with remainders at their deaths to his residuary estate, which the testator devised to his trustee, in trust to accumulate and capitalize five per cent. of the income until the principal should reach $500,000, and gave the remaining income among numerous charities. The testator, moreover, provided in his will that the trustee should retain any investment securities of which he might die possessed, and that the same should form part of the trust estates provided to be held in trust under the provisions of his will. The Auditing Judge, in his adjudication, held that interest should be awarded on the pecuniary legacies from July 1, 1931, the testator having died August 7, 1930, and the filing of the adjudication having been delayed by an attempt to settle the disputed question of interest on the legacies.

The exceptants, who are life beneficiaries of the trust estates, claim that they are entitled to income from the death of the testator. It is very clear they are not entitled, under section twenty-one of the Fiduciaries Act, to interest. They are not included in the preferred class of legatees, and the legacies are certainly not given for maintenance. There is nothing whatever in the will even to suggest such a purpose. Under the old law, as it existed prior to the Fiduciaries Act, a pecuniary legacy given in trust, as are these, carried interest from the date of the testator's death, differing in this respect from an ordinary legacy of money. The old rule was criticised

by Judge Penrose in Twells's Estate, 11 Dist. R. 713, and, in consequence of what he there said, section twenty-one of the Fiduciaries Act changed the law: Sterrett's Estate, 29 Dist. R. 147.

The exceptants, however, argue that they are entitled to the income received upon the securities owned by the testator because, in the above quoted paragraph, he directed the trustee to retain them as part of the trust estates. The evident intention of the testator was to prevent loss to his estate by sale of the investments which he had himself made, and, consequently, considered to be good. But the legacies are given to the trustee in dollars, not in specific investments, and, until the investments have been allotted among the various trusts, the beneficiaries cannot claim the interest derived from them. When the investments are so allotted they will be taken at their value at the time of distribution: Furness's Estate, 82 Pa. Superior Ct. 452.

Finally, it is argued in behalf of some of the next of kin of the testator that the interim income should be awarded to them on the ground that the testator died intestate with respect thereto. It is obvious, on the contrary, that the testator in express terms gave all the income to the residuary charities, five per cent. thereof being directed to be accumulated for the maintenance of the principal, which he had a clear right to do.

All of the exceptions are dismissed, and the adjudication is confirmed absolutely.